FILED
2013 Apr-04  PM 01:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **EDWIN L. BAKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | **4:12-CV-00948-VEH** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING COMMISSIONER,** | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>[1]

Plaintiff Edwin Lynn Baker (hereinafter Mr. Baker) brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. He seeks a review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner or "Secretary"), which denied his application for Social

---

[1] The court recently became aware that Carolyn W. Colvin was named the Acting Commissioner of the Social Security Administration on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on Mar. 13, 2013). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the officer of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

Security Disability Insurance Benefits. Mr. Baker timely pursued and exhausted his administrative remedies available before the Commissioner. This case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Baker was a 39-year-old male at the time of his hearing before the administrative law judge (hereinafter "ALJ"). (Tr. 23).  He has a limited education and is able to speak English.[2] (Tr. 23). His past work experiences include employment as a forklift operator, wire harness assembler, painter, material handler, cashier, and small parts assembler. (Tr.  40, 46, 48).

Mr. Baker claims he became disabled on March 2, 2008, due to degenerative disc disease of the back, sciatica, failed lumbar spine syndrome, and major depressive disorder. (Tr. 39–40). His last period of work ended in March 2008. (Tr. 46).

Mr. Baker filed his application for a period of disability and Disability Insurance Benefits on May 28, 2008. (Tr. 37). The claim was denied by the Commissioner on September 15, 2008. (Tr. 56–60).  Mr. Baker filed a timely written request for a hearing on October 20, 2008. (Tr. 63–64).  The hearing was held on June 3, 2010. (Tr. 35).  The ALJ concluded that Mr. Baker was not disabled and denied his

---

[2] There is conflicting testimony regarding Mr. Baker's highest completed grade level, ranging from 9th grade to 12th grade. *See* (Tr. 23) ("Compare Exhibit 1E/9 [12th grade] with Exhibit 11F [10th grade] with the claimant's hearing testimony [9th grade]."). However, the ALJ noted, "[f]or the purposes of this decision, and in [sic] attempt to afford the claimant the benefit of any reasonable doubt, the undersigned has selected the lower educational level."(Tr. 23).

application on July 27, 2010. (Tr. 13). On August 27, 2010, Mr. Baker filed a request for review of the hearing decision to the Appeals Council. (Tr. 7). The Appeals Council denied Mr. Baker's request for review on January 26, 2012. (Tr. 1).

Mr. Baker filed a Complaint on March 25, 2012, which asks this court to review the ALJ's decision. (Doc. 1). This court has carefully considered the record and, for the reasons stated below, reverses the decision of the ALJ.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of

validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient

reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)    whether the claimant can perform her past work; and
(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Mr. Baker has not engaged in substantial gainful activity since the alleged onset of his disability on March 2, 2008. (Tr. 18).  He also found that, in combination, Mr. Baker's failed back syndrome, lumbar degenerative disc disease, and sciatica are considered "severe" based on the requirements in Regulations 20 C.F.R. § 404.1520(c) and § 416.920(c). (Tr. 18). However, he found that Mr. Baker's depressive disorder is non-severe based on the requirements in Regulation 20 C.F.R. § 404.1520a(d)(1). (Tr. 18–19). The ALJ then held that the medically determinable impairments, in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 Appendix 1, Subpart P, of the Social Security Regulations.  (Tr. 20).

Contrary to Mr. Baker's testimony, the ALJ determined that Mr. Baker retains a residual functioning capacity (hereinafter "RFC") to perform a reduced range of sedentary work.[4]  (Tr. 20). Specifically, he found that—

> [Mr. Baker] can lift and carry 10 pounds occasionally and 5 pounds frequently. He can sit for at least 6 hours and can stand or walk a total of 2 hours out of an 8-hour workday. He can occasionally balance, stoop, kneel and climb ramps and stairs. He can otherwise perform work at the sedentary level of exertion that is simple, routine and repetitive in

---

[4]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

nature and that does not involve climbing ropes, ladders, or scaffolding
or more than occasional interpersonal interaction.

(Tr. 20).

Relying on the testimony of the vocational expert, the ALJ concluded that Mr.
Baker's impairments prevent him from performing his past relevant work. (Tr. 23).

The ALJ then considered Mr. Baker's capacity for a reduced range of sedentary
work, his age, his education, his work experience, under the Medical-Vocational
Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (hereinafter "grids"), and
concluded that there are jobs that exist in significant numbers in the national economy
that Mr. Baker can perform. (Tr. 24). In making this assessment, the ALJ relied on the
vocational expert's response to two hypothetical questions posed by the ALJ. The
ALJ asked the vocational expert whether there were any occupations that could be
performed by an "individual having the same age, education and work experience as
Mr. Baker and the abilities and limitations that were outlined as set forth in his
testimony." (Tr. 51). The vocational expert responded in the negative. *Id.* The ALJ
also asked the vocational expert whether there were any occupations that could be
performed by an individual with the same age, education and work experience as Mr.
Baker who was limited exertionally to no more than the sedentary exertional
category. (Tr. 50). The vocational expert testified that such an individual would be
able to perform the requirements of occupations such as "*dowel inspector*, of which

there exist over 400,000 jobs in the national economy and over 8,000 in the state economy; *cuff holder*, of which there exist over 500,000 jobs in the national economy and over 8,000 in the state economy; and *foundation maker*, representative of approximately 200,000 jobs in the national economy and 4,000 in the state economy." (Tr. 24). *See also* (Tr. 49–51).    Accordingly, the ALJ concluded that Mr. Baker was not under a disability at any time through the date of the ALJ's decision and therefore was not eligible for Disability Insurance Benefits under §§ 216(i) and 223(d) of the Social Security Act. (Tr. 24–25).

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence.  42 U.S.C. § 405(g).  "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5]  Mr. Baker asserts that the ALJ "erred as a matter of law in determining that he is not entitled to SSDI benefits and issued a decision that was not based on substantial evidence and is inconsistent with applicable law." (Doc. 7 at 1). In its

---

[5]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

8

review, this court finds that the ALJ's decision was not supported by substantial evidence.

Mr. Baker asserts that (1) the ALJ failed to properly evaluate the credibility of Mr. Baker's testimony, (2) the ALJ failed to fully and fairly develop the record, (3) failed to give appropriate weight to the opinion of Mr. Phillip Rogers, CRNP, and (4) failed to properly consider the combined effects of the Mr. Baker's multiple impairments. (Doc. 7 at 3–13). Because the court finds that the ALJ failed to properly evaluate the credibility of Mr. Baker's testimony, the court does not address the other issues.

## I.   THE ALJ'S CREDIBILITY FINDING IS NOT BASED ON SUBSTANTIAL EVIDENCE.

Mr. Baker argues he meets the Eleventh Circuit's pain standard and the ALJ's contrary decision is not supported by substantial evidence. The court agrees. More specifically, the ALJ's decision that Mr. Baker does not meet the pain standard is based on an erroneous negative credibility finding as to Mr. Baker's subjective pain testimony.

The pain standard "applies when a claimant attempts to establish disability through his own testimony concerning pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The standard requires evidence of an underlying medical condition and (1) objective medical evidence confirming the

9

severing of the alleged pain or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to cause the alleged pain. *See Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). A claimant's statements about pain or other symptoms do not alone establish disability. *See* 20 C.F.R. §§ 401.1529(a), 416.929(a). Instead, medical signs and laboratory findings must depict medical impairments that could reasonably be expected to produce the claimant's alleged symptoms. *See id.*; *see also Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.3d 1551 (11th Cir. 1986)).

Applying this standard to the present case, the ALJ correctly found that medical signs and laboratory findings depict medical impairments that could reasonably be expected to produce the alleged symptoms. (Tr. 21). However, the ALJ determined "the claimant's statements concerning the intensity, persistence, and limiting effects of theses symptoms are not credible to the extent that they are inconsistent with the above-delineated residual functional capacity assessment." *Id.* As explained *infra*, the court finds that the ALJ's determination was not supported by substantial evidence and the ALJ's reasons for discrediting the claimant's statement, while explicit, were not adequate as a matter of law.

The ALJ may reject a plaintiff's complaints of pain if he finds them not credible. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). However, if the ALJ discredits a claimant's testimony regarding the severity of his symptoms, that determination must be supported by substantial evidence. *Id.* Furthermore, "if [the ALJ's] reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true." *Pollard v. Astrue*, 867 F. Supp. 2d 1225, 1228 (N.D. Ala. 2012) (Guin, J.).

The ALJ may not reject the claimant's statements as to his pain's intensity and persistence "solely because the available objective medical evidence does not substantiate [a claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* SSR 96-7p.[6] Instead, the ALJ is bound to consider other evidence, in addition to the objective medical evidence, because "symptoms sometimes suggest a greater severity of impairment that can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(3). This "other evidence" includes statements made by the claimant in testimony during administrative hearings concerning the claimant's restrictions, daily activities, frequency and intensity of symptoms, any precipitating and aggravating factors, medication taken and any resulting side effects, and any other measures taken to alleviate the symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.912(b)(3). Using

---

[6]Although they lack the force of regulation, Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *see, e.g.*, *McCloud v. Barnhart*, 166 Fed. App'x 410, 419 (11th Cir. 2006) (citing SSR 96-6p as authoritative).

these "other evidence" factors, the ALJ must show substantial evidence supporting his decision to discredit the claimant's pain testimony. *Id.*

The ALJ concluded that Mr. Baker's statements "concerning the intensity, persistence, and limiting effects of his symptoms are not credible to the extent that they are inconsistent with the above-delineated residual functional capacity assessment." The court finds that, because the ALJ mischaracterized the evidence relied on to discredit Mr. Baker's pain testimony, the ALJ's credibility determination is not supported by substantial evidence.

### A.     The ALJ mischaracterized Mr. Baker's daily activities.

The ALJ found the range of daily activities reflected in the record inconsistent with Mr. Baker's testimony regarding the severity of his impairment. (Tr. 21). Specifically, the ALJ points to the following daily activities to contradict Mr. Baker's testimony: "working with small engines and cars, some sports activity with family members . . . , as well as cooking, cleaning, spending time with friends and sons, dishwashing, laundry, meal preparation, cookouts with his brother, driving, shopping, and the independent performance of self-care." *Id.* In support of his conclusion, the ALJ relies on Exhibits 4E, 6F, 11F, and 15F. *Id.* After a review of the evidence on which the ALJ relies, the court finds that the ALJ's recitation of Mr. Baker's daily activities mischaracterizes these exhibits.

Exhibit 4E is a Daily Activities Questionnaire (hereinafter "Questionnaire") filled out by Mr. Baker. (Tr. 162–63). On the Questionnaire, when prompted to describe what he does from the time he wakes up until going to bed, Mr. Baker responded: "I take a shower. Get dressed. Eat breakfast if I feel like it. I try to straighten up a little. Watch tv. Eat lunch. I might lay down and rest my back or watch tv until supper. Eat and watch tv until bed time." (Tr. 160). He indicated that his back pain wakes him up at night and makes it hard for him to go back to sleep. (Tr. 161). Mr. Baker noted that he spends fifteen to twenty minutes preparing his own meals, ten to fifteen minutes daily washing dishes, and an hour and thirty minutes weekly doing laundry. (Tr. 162). However, when asked to describe problems in these areas, he noted that he started cooking meals with minimal prep time so he "won't have to stand as long," and that he does not do much yard work because of his back. (Tr. 162–63). Mr. Baker further noted that he drives himself to go shopping for food and clothes four or five times a month and to visit his family two or three times a month. (Tr. 163–64). Moreover, Mr. Baker added, "[m]y activity is very limited because of my back. My depression stops me from being very social." (Tr. 167).

Similar to the activities described in the Questionnaire, a review of Exhibit 15F, which are treatment records from Mr. Baker's treating physician, reveals the following:

13

> [Mr. Baker's] daily routine is: getting up, making breakfast some days,
> going outside, watching TV, making and eating lunch, piddling outside
> and around the house, and watching TV. . . . [H]e has been trying to get
> out more (goes to the store around the corner) and has recently gone to
> his brother's to cook out a few times. . . . [H]e does see his sons often.

(Tr. 310). The activities described in Exhibits 4E and 15F are consistent with those

Mr. Baker testified to at the administrative hearing as well as with those described

elsewhere in the record. (Tr. 42–45, 250). Contrary to the ALJ's finding, the activities

listed do not in any way discredit his testimony of disabling pain.

The Eleventh Circuit has recognized that "participation in everyday activities

of short duration, such as housework or fishing," does not disqualify a claimant from

disability. *Lewis v. Callahan*, 123 F.3d 1436, 1441 (11th Cir. 1997). One court

explained further:

> [S]tatutory disability does not mean that a claimant must be a
> quadriplegic or an amputee. Similarly, shopping for the necessities of
> life is not a negation of disability and even two sporadic occurrences
> such as hunting might indicate merely that the claimant was partially
> functional on two days. *Disability does not mean that a claimant must
> vegetate in a dark room excluded from all forms of human and social
> activity ....* It is well established that sporadic or transitory activity does
> not disprove disability.

*Frizzell v. Astrue*, 487 F. Supp. 2d 1301, 1306 (N.D. Ala. 2007) (Guin, J.) (alteration

in original) (quoting *Smith v. Califano*, 637 F.2d 968, 971–72 (3d Cir. 1981)). The

crux of the inquiry is a claimant's "ability to engage in gainful employment . . . , not

whether a [claimant] can perform minor household chores or drive short distances."

14

*Frizzell*, 487 F. Supp. 2d at 1306. Thus, "[t]he ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled." *Id.*

While the ALJ's recitation of Mr. Baker's daily activities suggests that Mr. Baker is unrestricted by his disability in his everyday life, the ALJ's description is misleading. A review of the evidence on which the ALJ relies reveals that Mr. Baker spends fifteen to twenty minutes preparing his own meals, ten to fifteen minutes daily washing dishes, an hour and thirty minutes weekly doing laundry, and goes shopping for essentials about once a week. (Tr. 162). These reported activities of daily living do not rule out the presence of disabling pain. Contrary to what the ALJ's description suggests, the evidence reveals that the daily activities cited by the ALJ represent only a tiny fraction of Mr. Baker's day. Thus, as the court explained in *Lewis*, the minimal amount of time that Mr. Baker spends cooking and cleaning does not disqualify him from disability.

Moreover, the evidence on which the ALJ relies actually tends to show that Mr. Baker was limited in his daily activities by his back pain. For example, in the Questionnaire, Mr. Baker explicitly stated that his back pain limited his ability to cook, sleep, complete yard work and drive. (Tr. 161–63). Thus, the daily activities

reflected in the record tend to bolster Mr. Baker's testimony of disabling pain rather than contradict it.

Finally, Mr. Baker contends, "the activities cited [by the ALJ] are actually more limited than insinuated." (Doc. 7 at 8). The court agrees. For example, the ALJ found that Mr. Baker spends his time working on small engines and cars and engaging in sports activities with family members. Yet, the sole mention of Mr. Baker's involvement with small engines, cars, or sports is found in the following excerpt in Exhibit 11F: "awakes 8 or 9, cleans, stays around house, doesn't drive much, watches a lot of T.V. small engines, cars; some sports w/ family; few friends, not currently dating." (Tr. 288). The excerpt neither mentions the frequency nor the substance of the aforementioned activities. Thus, the ALJ mischaracterized this exhibit. Similarly, the ALJ mischaracterized Exhibit 15F by including "cookouts with his brother" within the description of Mr. Baker's <u>daily</u> activities. (Tr. 21) (emphasis added). The record actually provides that Mr. Baker has "recently gone to his brother's to cook out a few times." (Tr. 310). The use of the phrase "a few times" indicates that Mr. Baker's attendance at the cookouts was infrequent.

Viewing the record as a whole, Mr. Baker, at most, sporadically engaged in engine and car work, family sporting events, and family cookouts. The record simply does not support the ALJ's conclusion as to Mr. Baker's level of involvement in these

activities. Thus, the ALJ erred in discrediting Mr. Baker's testimony based on these activities. While the ALJ's description of Mr. Baker's daily activities, if it accurately reflected those activities, would certainly tend to negate Mr. Baker's credibility, the ALJ mischaracterized the evidence in the record. Because the ALJ's credibility determination rested on mischaracterized evidence, the ALJ's finding is not supported by substantial evidence.

**B.     The ALJ mischaracterized Mr. Baker's medical history.**

The ALJ also found Mr. Baker's medical history inconsistent with his allegations of disability. (Tr. 21).

In support of his finding, the ALJ noted, "[s]ince the claimant's spinal surgery, the claimant has had frequent medical attention with regard to his subjective allegations . . . . On these occasions, the claimant's treating physicians noted that the claimant suffered from no physical abnormalities, no disc herniations, and no signs of swelling, additionally, they noted that there were no signs of significant central spinal canal stenos or nerve root impingement." (Tr. 22). This factual determination also is a mischaracterization of the record.

Contrary to the ALJ's finding, the record contains several documentations of physical abnormalities supporting Mr. Baker's allegations of disabling pain following his October 2006 surgery. (Tr. 219, 236, 237, 241, 283). Notably, an MRI dated

17

October 22, 2007, documented scar tissue and a right lateral disc bulge with flattening of the anterior aspect of the thecal sac encroachment on the inferior aspect of the neural foramina on L4-5, a broad-based disc bulge with flattening of the anterior aspect of the thecal sac at L3-4, a mild central disc bulge with flattening of the anterior aspect of the thecal sac at L5-S1, and diffuse disc desiccation throughout the lumbar spine. (Tr. 219).

The ALJ further noted, "[m]ost importantly in all of the medical records, there exists no evidence of physical limitations as to the claimant's daily activities or any evidence of diminished strength." (Tr. 22). In making this statement, the ALJ selectively overlooked some record evidence. For example, in support of his conclusion, the ALJ relied on the opinion of Dr. Henry Born, a consulting physician, who stated that Mr. Baker "demonstrated normal strength and dexterity of his upper and lower extremities and exhibited no loss in the range of motion in his cervical spine, shoulders, elbows, writs, hands, fingertips, ankles, knees or feet." *Id.* However, the ALJ failed to mention that Dr. Born's report <u>also</u> documented that Mr. Baker had limited range of motion in the flexion, extension, right lateral flexion, left lateral flexion, right lateral rotation, and left lateral rotation of his dorsolumbar spine. (Tr. 253). The ALJ "cannot pick and choose among a doctor's records to support his own conclusion." *Chambers v. Astrue*, 671 F. Supp. 2d 1253, 1258 (N.D. Ala. 2009)

(Guin, J.). In making his finding, the ALJ did just that. Further, the medical evidence reveals several documentations of the physical limitations on Mr. Baker's daily activities. For example, one medical report noted that Mr. Baker's symptoms are "aggravated by changing positions, daily activities, extension and flexion." (Tr. 284). Thus, the ALJ's finding is inconsistent with the record.

The ALJ also found, "[t]he record contains no reference to any precipitating medical event proximate to the claimant's alleged onset of disability. Specifically, no documented worsening of any one of his alleged back problems, no change to his overall medical condition, and no constant increase in back pain were cited." (Tr. 22). This factual finding is logically inconsistent. Furthermore, it does not follow that an increase in back pain must be preceded by a precipitating medical event. The medical evidence depicts a longitudinal history of persistent and disabling back pain that increased over time. (Tr. 219, 236, 237, 241, 283). After a brief reprieve from his pain following his October 2006 surgery, the record shows that Mr. Baker's back pain returned in September 2007. (Tr. 213). The October 2007 MRI of Mr. Baker's spine dated October 22, 2007, also supports Mr. Baker's subjective complaints of pain. (Tr. 219). During a November 2007 doctor visit, Mr. Baker stated that "he had been pretty miserable with his back pain" and the doctor noted that "he appear[ed] to be in visible pain." (Tr. 237). He subsequently underwent several epidural injections in

19

an attempt to reduce his back pain. (Tr. 239, 243). Further, during a January 2009

doctor's visit, Mr. Baker stated that "he gets some [relief] from the pain medication,"

but "generally [his] pain is no better." (Tr. 284). Thus, the ALJ's decision to discredit

Mr. Baker's testimony based on his medical records is not supported by substantial

evidence.

### C.   The ALJ mischaracterized the evidence regarding Mr. Baker's work history.

The ALJ relied on Mr. Baker's work record to support his decision to discredit

Mr. Baker's testimony. Specifically, the ALJ noted:

> During the three-year period before the claimant's alleged onset of
> disability, he successfully engaged in substantial gainful activity with
> one employer, an automotive industry manufacturer, and kept a 40-hour
> workweek schedule. While employed at the automotive company, the
> claimant successfully worked through the alleged back pain and
> subsequent surgical intervention, and managed to keep up with
> numerous medical appointments without having to abandon his job . .
> . . Consistent with the claimant's obvious level of functioning during
> this period, no treating source observed any limitation in the claimant's
> ability to perform work outside the normal recovery period after his
> back surgery.

(Tr. 20–21). He further noted, "[i]t is significant that the claimant filed his disability

application directly after being terminated from his job." (Tr. 22).

The ALJ's finding that Mr. Baker was able to "keep a 40-hour work week

schedule" and "keep up with numerous medical appointments without having to

abandon his job" again mischaracterizes the record. (Tr. 22). Notably, Mr. Baker was

allegedly terminated after missing work and coming in late due to chronic insomnia related to his back pain. (Tr. 40). Because his termination was directly linked to his persistent, disabling pain, this evidence tends to substantiate Mr. Baker's testimony rather than discredit it.

Finally, Mr. Baker asserts, "the fact that [Mr. Baker] worked through his back pain and returned to work after his surgery bolsters his credibility and demonstrates his strong work ethic." (Doc. 7 at 9). While at least one district judge of this court has alluded to this principle, the court is unaware of any binding authority supporting this assertion. *See Strickland v. Astrue*, 493 F. Supp. 2d 1191, 1197 (N.D. Ala. 2007) (Guin, J.) ("Moreover, the ALJ noted at the hearing that "I see from your earnings record you've had a real good earnings record, very consistent earnings." . . . While the ALJ ignored this in his decision, the plaintiff's work history supports his credibility regarding his inability to work because of physical limitations and pain."). However, as discussed *supra*, when considered in light of the medical evidence on record documenting Mr. Baker's disabling pain during this time, Mr. Baker's work history has little probative value in respect to negating his credibility. Therefore, the ALJ's finding is not supported by substantial evidence.

In sum, because the ALJ mischaracterized the evidence on which he relies to discredit Mr. Baker's testimony, none of the ALJ's reasons for discrediting Mr. Baker

amounts to substantial evidence in support of his adverse credibility finding. Thus, the ALJ erred in discrediting Mr. Baker's subjective testimony of pain. Because the vocational expert testified that Mr. Baker would be unable to perform any occupation if his testimony were credited, the court will remand this case for an award of benefits.

## CONCLUSION

Upon review of the evidence in the record and the submissions of the parties, the court finds that the ALJ's decision is not supported by substantial evidence. For the foregoing reasons, the decision of the ALJ will be reversed and remanded for calculation of the benefits owed.

**DONE** and **ORDERED** this the 4th day of April, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge